**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| QUEVAUGHNA HANKINS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:13-CV-01365-RWS |
| OFFICER RHETT DAVIS, a | : | |
| police officer with the City of | : | |
| Clarkston Police Dep't, as an | : | |
| individual, and THE CITY OF | : | |
| CLARKSTON, GEORGIA, | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

This case comes before the Court on Defendant City of Clarkston's

Motion for Summary Judgment [34] and Rhett Davis's Motion for Summary

Judgment [35].  After reviewing the record, the Court enters the following

Order.

### **Background**[1]

This civil rights action arises out of the alleged excessive use of force by

Defendant Rhett Davis, an officer with the City of Clarkston Police

---

[1]The following facts are taken from the parties' statements of material facts.
Unless otherwise noted, all facts are undisputed.

Department, against Plaintiff Quevaughna Hankins during a traffic stop.  On the

morning of September 24, 2012, Plaintiff was riding in a Ford Taurus with her

husband, Robert Hines, when Defendant decided to pull Hines over for

speeding.  Defendant turned on his blue lights, and Hines pulled over into the

parking lot of a laundromat.  Defendant spoke to Hines and asked him for his

driver's license and registration.  After running a computer check, Defendant

determined that Hines's driver's license was suspended.  Defendant returned to

the Taurus, instructed Hines to get out of the car, and placed him under arrest.

After putting Hines in the patrol car, Defendant decided to verify whether

Plaintiff, who had been the passenger in the car, was the registered owner of the

vehicle and had a valid driver's license.  Defendant states he wanted to release

the vehicle to the registered owner instead of having to impound it.  As

Defendant started to walked over to the Taurus to speak to Plaintiff, Plaintiff

got out of the car because she intended to move to the driver's seat.  At this

point, the parties' versions of events sharply diverge.

Taking Plaintiff's version of events as true, Plaintiff asked if Defendant

was taking Hines to jail and if she could talk to him or get his phone so she

could call his employer.  (Hankins Depo., Dkt. [35-8] at 18:13-19.)  Defendant

AO 72A
(Rev.8/82)

told her she could not talk to Hines and that she needed to get back in the car. (<u>Id.</u>)  Plaintiff complied and sat back down in the passenger seat.  (<u>Id.</u> at 18:20-25.)

After Plaintiff returned to the car, Defendant asked for her driver's license and insurance information.  Plaintiff then opened the door and started to step out of the car again as she explained that her purse was in the trunk.  (<u>Id.</u> at 20:19-21:13.)  Defendant told her she needed to get back in, and as she was stepping out he pushed her with both his hands and then tried to slam the door. (<u>Id.</u> at 21:8-17.)  Plaintiff's right leg, however, was already completely out of the car, and so Defendant slammed the door against her leg.  (<u>Id.</u> at 23:5-8.) Plaintiff pushed back, but Defendant kept pushing back even harder while shouting, "Get your ass in the car.  I told you to get your ass in the car." (<u>Id.</u> at 23:5-14.)  Plaintiff pushed back several times as Defendant continued to slam the door until Plaintiff was able to pull her leg back in the car.  (<u>Id.</u> at 24:6-24.) The door mostly made contact with her ankle.  (<u>Id.</u> at 32:7.)  Because Defendant tried to slam the door "over and over again," (<u>id.</u> at 67:21-24) Plaintiff asserts that Defendant acted intentionally out of "anger" and "rage," (<u>id.</u> at 67:9-20.).

AO 72A
(Rev.8/82)

Finally, Defendant let her step out of the car to get her license from her purse in the trunk.  (Id. at 25:1-16.)  Defendant observed no physical injuries on Plaintiff's leg.  While Defendant went back to his vehicle with Plaintiff's license, Plaintiff called 911 and told the dispatcher that an officer was assaulting her.  (Id. at 25:17-19.)  A couple of more officers arrived on the scene, including a supervisor, who told Plaintiff she would have to go to the police station to make a complaint.  (Id. at 25:20-26:13.)

Later that morning, Plaintiff got a call from her son's school informing her that her son was sick and that she needed to come pick him up.  Plaintiff took her son to the doctor.  After the doctor examined her son, Plaintiff asked the doctor to look at her ankle.  (Id. at 38:22-39:7.)  Plaintiff says it was hard for her to walk because her ankle was hurting, was "a little swollen," and had some "light bruising."  (Id. at 39:15-20.)  The doctor told her there was some soft tissue damage and gave her prescriptions to help the pain and swelling.  (Id. at 40:7-10.)  The doctor also told her to ice the ankle and keep it elevated.  (Id.) Following the visit to the doctor, Plaintiff went to the pharmacy to get her son's prescription filled and bought Motrin and Aleve over the counter for herself. (Id. at 41:8-16.)  Plaintiff opted not to fill her own prescriptions because the

4

doctor told her they were the same as over-the-counter drugs.  (Id. at 41:17-21.)

Plaintiff sought no further medical treatment.

After this incident, on April 25, 2013, Plaintiff filed this action pursuant

to 42 U.S.C. § 1983 against Defendant Davis in his individual capacity and the

City of Clarkston.  Plaintiff alleges that Davis violated her Fourth Amendment

rights by using excessive force and that he committed battery and false

imprisonment under Georgia law.  Plaintiff seeks to hold the City of Clarkston

liable for its alleged practice of failing to adequately screen or conduct

background checks on its officers before hiring them.  Plaintiff also alleges that

Defendant had internal affairs complaints lodged against him before this

incident yet the City of Clarkston failed to supervise and train Defendant,

leading to his excessive use of force.  Defendants move for summary judgment

on all claims.

## Discussion

## I.      Summary Judgment Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be

granted "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.

5

56(a).  "The moving party bears 'the initial responsibility of informing the . . .

court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue

of material fact.' " Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259

(11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)

(internal quotations omitted)).  Where the moving party makes such a showing,

the burden shifts to the non-movant, who must go beyond the pleadings and

present affirmative evidence to show that a genuine issue of material fact does

exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257  (1986).

    The applicable substantive law identifies which facts are material.  Id. at

248.  A fact is not material if a dispute over that fact will not affect the outcome

of the suit under the governing law.  Id.  An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

    Finally, in resolving a motion for summary judgment, the court must

view all evidence and draw all reasonable inferences in the light most favorable

to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296

(11th Cir. 2002).  But, the court is bound only to draw those inferences which are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II.     Defendant Davis's Motion for Summary Judgment

### A.     Fourth Amendment Claim

Defendant argues that he did not use excessive force and that he is entitled to qualified immunity.  The doctrine of qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities.  Wilson v. Layne, 526 U.S. 603, 609 (1999). Officials are shielded "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

AO 72A
(Rev.8/82)

would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1357 (11th Cir. 2003). Once the government official has satisfied this initial burden, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity. <u>Id.</u> at 1358. The Court finds that Defendant was acting in his discretionary authority by conducting a lawful traffic stop; therefore, it is Plaintiff's burden to show that he is not entitled to qualified immunity.

Whether an official is entitled to qualified immunity is determined by a two-step inquiry: One inquiry is "whether the plaintiff's allegations, if true, establish a constitutional violation." <u>Barnett v. City of Florence</u>, 409 F. App'x 266, 270 (11th Cir. 2010) (citing <u>Hope v. Pelzer</u>, 536 U.S. 730, 736 (2002)). "If the facts, construed . . . in the light most favorable to the plaintiff, show that a constitutional right has been violated, another inquiry is whether the right violated was 'clearly established.' " <u>Id.</u> (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)). "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case." <u>Id.</u> (citing <u>Pearson v. Callahan</u>,

8

555 U.S. 223, 241 (2009)).  Moreover, the Eleventh Circuit "has explained that when applied in excessive force cases, 'qualified immunity applies unless application of the standard would inevitably lead every reasonable officer in [the position of the defendant officer] to conclude the force was unlawful.' " Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000) (quoting Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993)).

To show an excessive force claim under the Fourth Amendment, a plaintiff "must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable." Troupe v. Sarasota Cnty., Fla., 419 F.3d 1160, 1168 (11th Cir. 2005).  The reasonableness inquiry requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Conner, 490 U.S. 386, 396 (1989) (internal quotations omitted).  Courts rely on several factors "in determining whether an officer's use of force was objectively reasonable, including '(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically.' " Hadley v. Gutierrez,

9

526 F.3d 1324, 1329 (11th Cir. 2008) (quoting <u>Slicker v. Jackson</u>, 215 F.3d

1225, 1233 (11th Cir. 2000)).  "Although the facts must be taken in the light

most favorable to the plaintiff[], the determination of reasonableness must be

made from the perspective of the officer . . . ."  <u>Troupe</u>, 419 F.3d at 1168.

Moreover, the Supreme Court has recognized that an "investigatory stop

necessarily carries with it the right to use some degree of physical coercion or

threat thereof to effect it."  <u>Graham</u>, 490 U.S. at 396.[2]

     Defendant insists that Plaintiff cannot succeed on her claim because

Defendant applied de minimis force.  Even if a court determines that the level of

force "may have been unnecessary, [if] the actual force used and the injury

inflicted were both minor in nature," there is no Fourth Amendment violation.

<u>See</u> <u>Nolin</u>, 207 F.3d at 1256-57 (explaining that "de minimis force, without

more, will not support a claim for excessive force in violation of the Fourth

---

[2]The parties dispute whether Plaintiff was seized within the meaning of the Fourth Amendment.  It is well settled that "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."  <u>Terry v. Ohio</u>, 392 U.S. 1, 16 (1968).  For that reason, "[a] traffic stop is a seizure within the meaning of the Fourth Amendment."  <u>U.S. v. Purcell</u>, 236 F.3d 1274, 1277 (11th Cir. 2001).  Here, Defendant conducted a routine traffic stop, thereby seizing Plaintiff.  Because the alleged assault took place within the context of a seizure, Plaintiff's claim is properly analyzed under the Fourth Amendment.

Amendment"). For example, in <u>Nolin</u>, an officer was arresting the plaintiff when he "grabbed [the plaintiff] from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him." <u>Id.</u> at 1255. The plaintiff suffered bruising to his forehead, chest, and wrists. <u>Id.</u> But, given that the bruising disappeared quickly and the plaintiff did not seek medical treatment, the Eleventh Circuit held that the officer applied "a minimal amount of force and injury" and was consequently entitled to qualified immunity. <u>Id.</u> at 1258; <u>see also</u> <u>Jones v. City of Dothan, Ala.</u>, 121 F.3d 1456, 1460 (11th Cir. 1997) (de minimis force used when officers " 'slammed' [the plaintiff] against the wall, kicked his legs apart, required him to raise his arms above his head, and pulled his wallet from his pants," even though the plaintiff suffered pain related to a previous stroke and required minor medical treatment for his arthritic knee three days later); <u>Williams v. Sirmons</u>, 307 F. App'x 354, 361 (11th Cir. 2009) (de minimis force used when one officer "grabbed [the plaintiff] from behind and pulled her to the ground" while another officer "placed his knee on her back and put his weight upon her in order to handcuff her").

11

Before deciding whether Plaintiff's injuries were de minimis or not, the Court first addresses whether Defendant was justified in using any level of force at all.  Plaintiff asserts that Defendant was not justified in using even de minimis force, as Plaintiff was not the one being arrested but was instead an innocent bystander.  (See Pl.'s Resp., Dkt. [37] at 9-10.)  Plaintiff cites Thornton v. City of Macon, 132 F.3d 1395 (11th Cir. 1998), in arguing that police may not use any level of force against an innocent bystander.  In Thornton, a woman asked officers to assist her in exchanging possessions with her former roommate, Thornton.  Id. at 1397-98.  When Thornton refused to make the exchange, the officers entered his private residence and arrested him for obstruction of justice.  Id. at 1398.  Cravey, one of Thornton's friends, had been sitting in his truck in Thornton's driveway and witnessed the arrest.  Id. As the officers led Thornton to the patrol car, Thornton yelled to Cravey to call his mother and lawyer and to lock his apartment.  Id.  Cravey left his truck and approached the officers to ask if he could enter Thornton's apartment to use the phone.  Id.  One officer patted Cravey down and found a pocket knife.  Id.  At that point, "[t]he officer charged Cravey with 'obstruction,' slammed him down onto the hood of a police car, and cuffed his hands behind his back."  Id.

12

The Eleventh Circuit held that because "the plaintiff had committed no crime" and the officers had no warrant to enter the residence, the officers were "merely attempting forcibly to resolve a civil dispute" and thus acted outside of their duty to maintain the peace when they arrested the plaintiffs.  <u>Id.</u> at 1399. "Under the circumstances, the officers were not justified in using *any* force, and a reasonable officer thus would have recognized that the force used was excessive."  <u>Id.</u> at 1400.

In contrast, here Defendant was acting within his lawful authority to conduct a traffic stop.  Although Hines was the driver and was the one placed under arrest, Plaintiff was also seized in the course of the traffic stop. Therefore, unlike in <u>Thornton</u>, where the officers acted wholly outside their authority, here Defendant acted in the context of a lawful traffic stop and arrest of the driver.  The Supreme Court has further held that it is "reasonable for passengers to expect that a police officer at the scene of a crime, arrest, or investigation will not let people move around in ways that could jeopardize his safety."  <u>Brendlin v. California</u>, 551 U.S. 249, 258 (2007).  In that regard, the Supreme Court has "held that during a lawful traffic stop an officer may order a passenger out of the car as a precautionary measure, without reasonable

13

suspicion that the passenger poses a safety risk." Id.  Moreover, "[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." Id. (quoting Maryland v. Wilson, 519 U.S. 408, 414 (1997)) (internal quotation marks omitted).

Taking Plaintiff's facts as true while viewing the events through the perspective of the officer, as the Court must, the Court cannot say that no reasonable officer would have concluded that some measure of force was necessary when Plaintiff attempted to get out of the car after being told to stay in the vehicle.  After all, Defendant had just placed the driver under arrest, placed him in the patrol car, and was returning to speak to Plaintiff when she first stepped out of the car.  In the context of a lawful traffic stop resulting in an arrest, a reasonable officer would want to exert control of the situation to ensure his safety.  Defendant was thus justified in ordering Plaintiff to stay in the car. Plaintiff admits that she then tried to step out of the car again.  She explains she needed to get her purse out of the trunk, but from the officer's perspective, she was not cooperative.  And, given that the Supreme Court has acknowledged that officers have "the right to use some degree of physical coercion or threat thereof to effect it" in making an investigatory stop, see Graham, 490 U.S. at

14

396, the next question is whether Defendant used an unreasonable degree of force.  If Defendant used de minimis force, however, he is entitled to qualified immunity.

Viewing the facts in the light most favorable to Plaintiff, although she states that Defendant repeatedly slammed the car door against her ankle, the extent of her injuries indicate that the amount of force used was de minimis. See Gold v. City of Miami, 121 F.3d 1442, 1446-47 (11th Cir. 1997) (holding that officer used de minimis force where the plaintiff alleged that handcuffs were applied so tightly that he was in pain for twenty minutes because the plaintiff "suffered only skin abrasions for which he did not seek medical treatment").  Although Plaintiff experienced some pain as a result of Defendant slamming the door against her ankle, she acknowledges that she had swelling and minor bruising that did not require emergency medical attention.  She did not visit a doctor until she was called to pick up her sick son from school. Furthermore, she treated her injury with over-the-counter pain relievers, which apparently were the same as the ones for which she received a prescription. Plaintiff does not seek compensation for medical bills, however, nor does she submit photographs showing the extent of her injuries.

15

The Court recognizes Plaintiff's argument that in hindsight, Defendant's use of force seemed unnecessary. Eleventh Circuit cases acknowledge, on the other hand, that some amount of unnecessary force may not be "plainly unlawful." See, e.g., Post, 7 F.3d at 1559-60 ("[E]ven though pushing [the plaintiff] against the wall might have been unnecessary, this pushing was not plainly unlawful" because de minimis force was used.). In this case, even if pushing Plaintiff back into the car and slamming the door on her ankle was unnecessary, "the actual force used and the injury inflicted were both minor in nature." See Nolin, 207 F.3d at 1256-57. Plaintiff's injuries are similar to the bruising and pain in the cases cited above where courts found that the extent of the injury reflected a de minimis use of force. Consequently, Defendant's actions would not "inevitably lead" every reasonable officer in Defendant's position to conclude that Defendant's use of force was unlawful. See Post, 7 F.3d at 1559. Defendant is thus entitled to qualified immunity, and his Motion for Summary Judgment [35] is **GRANTED** as to Plaintiff's Fourth Amendment claim.

16

AO 72A
(Rev.8/82)

B.        State-Law Claims

As for Plaintiff's claims under Georgia law for battery and false

imprisonment, Defendant asserts he is entitled to official immunity.  The state

constitutional provision governing official immunity provides:

> [A]ll officers or employees of the state or its departments and
> agencies may be subject to suit and may be liable for injuries and
> damages caused by the negligent performance of, or negligent
> failure to perform, their ministerial functions and may be liable for
> injuries and damages if they act with actual malice or with actual
> intent to cause injury in the performance of their official functions.
> Except as provided in this subparagraph, officers and employees of
> the state or its departments and agencies shall not be subject to suit
> or liability, and no judgment shall be entered against them, for the
> performance or nonperformance of their official functions.

GA. CONST. art. I, § 2, ¶ 9(d).  The Supreme Court of Georgia has held that the

term "official functions" refers to "any act performed within the officer's or

employee's scope of authority, including both ministerial and discretionary

acts."  Gilbert v. Richardson, 452 S.E.2d 476, 483 (Ga. 1994).  Accordingly,

under this definition, the constitutional provision "provides no immunity for

ministerial acts negligently performed or for ministerial or discretionary acts

performed with malice or an intent to injure."  Id.  "It, however, does provide

immunity for the negligent performance of discretionary acts . . . ."  Id.  In sum,

17

under Georgia law, "a public officer or employee may be personally liable only for ministerial acts negligently performed or discretionary acts performed with malice or intent to injure." Harvey v. Nichols, 581 S.E.2d 272, 276 (Ga. Ct. App. 2003).

As a threshold matter, the Court finds that Defendant was performing discretionary acts in conducting a traffic stop. Consequently, Plaintiff must show that Defendant acted with actual malice to defeat official immunity. For purposes of official immunity, " 'actual malice' requires a deliberate intention to do wrong, and denotes express malice or malice in fact. It does not include willful, wanton or reckless conduct or implied malice. Thus, actual malice does not include conduct exhibiting a reckless disregard for human life." Daley v. Clark, 638 S.E.2d 376, 386 (Ga. Ct. App. 2006). Plaintiff asserts that Defendant acted maliciously, pointing to his harsh command, "Get your ass in the car." (See Hankins Depo., Dkt. [35-8] at 23:5-14.) She testified that he slammed the door "with malice" and "with anger." (Id. at 72:16-18.) Setting aside the legal conclusion that Defendant acted with malice, evidence of "frustration, irritation, and possibly even anger is not sufficient to penetrate official immunity." Selvy v. Morrison, 665 S.E.2d 401, 406 (Ga. Ct. App.

18

2008).  What is more, the Court has already found that Defendant used de minimis force.  Similarly, in Tittle v. Corso, 569 S.E.2d 873, 877 (Ga. Ct. App. 2002), a plaintiff argued that an officer exhibited actual malice when he used profanity and threats while slamming the plaintiff into the patrol car even though the plaintiff was unarmed and not resisting.  The Georgia Court of Appeals noted that the officer's profanity and threats did not demonstrate deliberate intention to commit a wrongful act.  Id.  Moreover, the court held that the plaintiff's characterization of the officer "slamming" him against the police car did not, without more, show a "use of physical force . . . so excessive or unnecessary as to demonstrate a deliberate intent to do wrong."  Id.  Instead, while the court did not condone the officer's behavior, it found that his actions were consistent with an effort to restrain the plaintiff while he investigated and secured the scene.  Id.  Likewise, here Defendant was attempting to secure the scene after arresting Hines.  In light of the de minimis use of force, the Court does not find any evidence of actual malice to defeat official immunity under Georgia law.  For these reasons, Defendant Davis's Motion for Summary Judgment [35] is **GRANTED** as to the state-law claims against him.

19

**II.      City of Clarkston's Motion for Summary Judgment**

Plaintiff also sued the City of Clarkston ("City") on a municipal liability theory arguing that the City's policies led to her injury.  The City first argues that is entitled to summary judgment because Defendant Davis committed no constitutional violation for which the City can be held liable.  Indeed, because the Court granted summary judgment in favor of Davis, the City is also entitled to summary judgment.  The City next argues that even if Davis committed a constitutional violation, Plaintiff's claim against the City fails on the merits and summary judgment should be granted on this additional ground.  The Court agrees.

Local government units such as cities constitute "persons" subject to suit under § 1983.  <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 690 (1978).  At the same time, however, the Supreme Court "has placed strict limitations on municipal liability under § 1983."  <u>Grech v. Clayton County</u>, 335 F.3d 1326, 1329 (11th Cir. 2003).  In <u>Monell</u>, the Supreme Court held that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  436 U.S. at 691.  On the contrary, the Court held that local governing bodies can be sued under § 1983 only where "the action that is alleged to be unconstitutional

20

AO 72A
(Rev.8/82)

implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690.  In other words, to hold a municipality liable under § 1983, a plaintiff must show that a city employee or policymaker committed the constitutional violation, and did so pursuant to an official city policy or custom. Id. at 694.

Furthermore, the causation element requires a showing that, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997).  "Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights." Id. at 415 (emphasis in original).  "To meet this burden, a plaintiff must demonstrate that the lawful action was 'taken with deliberate indifference as to its known or obvious consequences.' " McDowell v. Brown, 392 F.3d 1283, 1291 (11th Cir. 2004) (quoting Brown, 520 U.S. at 407).  A showing of mere negligence is not enough to establish municipal liability. Id.

Plaintiff argues that the City received complaints about Davis's behavior while he was an officer there and failed to discipline him.  Plaintiff also asserts that the City was aware of previous complaints made against Davis when he

worked at other police departments but hired him anyway.[3]  Assuming that

these decisions were made by final policymakers, there is still no evidence that

these decisions were the moving force behind Plaintiff's harm.  Davis's

previous complaints related to failing to turn on his dashboard camera while he

worked for the City of Clarkston, (Davis Depo., Dkt. [37-3] at 19-20), and

competing with a fellow officer to see who could get more DUI arrests while he

worked for the City of Decatur, (id. at 29).  Davis was never accused of

excessive force, however.  The fact that Davis was investigated for minor issues

does not demonstrate that the City was deliberately indifferent to use of

excessive force.  In fact, even if these complaints related to Davis's use of

excessive force, the fact that the City conducted internal affairs investigations of

Davis cuts against Plaintiff's argument that the City was deliberately

indifferent.  See, e.g., Brooks v. Scheib, 813 F.2d 1191, 1193-94 (11th Cir.

1987) (finding "no evidence . . . the City knew or should have known that the

---

[3]Plaintiff alleged in her Complaint that the City failed to train Davis to deal
with the public and to use proper levels of force.  (Compl., Dkt. [4] ¶¶ 34-35.)
Plaintiff did not produce evidence that the City had inadequate training policies, while
Defendants show that Davis received law enforcement training.  (See Clarkston's Br.,
Dkt. [34-1] at 13.)  Plaintiff fails to dispute or otherwise respond to this evidence.
Accordingly, there is no evidence from which a jury could find that the City failed to
train Davis.

natural consequences of its policy and practices would be the deprivation of constitutional rights" when it fully investigated multiple complaints against an officer but found they lacked merit); <u>Putnam v. City of Atlanta</u>, No. 1:10-CV-03243-RWS, 2012 WL 3582607, at *7-8 (N.D. Ga. Aug. 16, 2012) (finding that while citizens made complaints against defendant, only one of which was for use of excessive force, the city was not deliberately indifferent because it investigated the complaints and found insufficient evidence to sustain them).

As for whether the City failed to conduct a sufficient background check on Davis before hiring him, Plaintiff again fails to show that such a failure was the moving force behind her injury. As stated above, the previous complaints appear to have involved minor policy violations, not use of excessive force. Furthermore, Defendants produce evidence that the City spoke to Davis's previous supervisors, all of whom gave positive reviews. (<u>See</u> Steven Davis Aff., Dkt. [34-7] ¶ 6, 8.) The City also conducted a criminal background check revealing that Davis had never been arrested. (<u>Id.</u> ¶ 9.) Therefore, there is no evidence that the City knew Davis had a history of excessive use of force when it hired him. And, even if these screening procedures were inadequate, the City "is not liable for [its] isolated decision to hire [Davis] without adequate

screening, because [Plaintiff] has not demonstrated that [its] decision reflected a conscious disregard for a high risk that [Davis] would use excessive force in violation of [Plaintiff's] federally protected right." Brown, 520 U.S. at 415-16 (finding an insufficient link between a sheriff's hiring decision and plaintiff's injury because even if the sheriff had fully reviewed the officer's file, the officer's use of excessive force was not "a plainly obvious consequence of the hiring decision"). Because Plaintiff has not produced evidence that any of the City's policies was the moving force behind her alleged constitutional deprivation, the City of Clarkston's Motion for Summary Judgment [34] is **GRANTED**.

**Conclusion**

For the foregoing reasons, Defendant City of Clarkston's Motion for Summary Judgment [34] and Defendant Davis's Motion for Summary Judgment [35] are **GRANTED**.

**SO ORDERED**, this _5th_ day of January, 2015.

**RICHARD W. STORY**
United States District Judge

24